The opinion of the Court was delivered by
Seawell, J.
The Complainants in the original bill, charge, that William Jones, being possessed of the orq nal stock of the slaves in, question, devised the use of them to his wife for life, and directed by his will, that after his wife’s death* the slaves should be divided by his , executors amongst all his children, and made the wife and his son William (one of the Complainants) his executors : It further charges, that the wife died in l?93, and that the Defendant has possession of the slaves under some purchase for a small price, and with full notice of the children’s claim, and that the Plaintiffs represent the children. The bill also charges, that the wife elected to hold as legatee, and that all the debts had been paid r before fhe sale of the slaves, and prays that the slaves may be surrendered, and the Defendant decreed to ac-count for their profits.
The Defendant, by his answer, in substance says, that 1 J he purchased from Sarah Jones (the widow) Brittain Jones and Elizabeth, two of the children, and William Perry, who it seems married one of the daughters of the testator; that the vendors assured him they could or -would *226 . make a good title* and that he did not pretend to be á judge of its goodness, but bought upon their assurance i that he understood the sale was made for the support of the family—that EÍizábéth was at thát time of full age;
Upon this bill and answer, a Jury is called upon to try the truth of the matters in dispute between the parties ; and these matters in dispute can only be found, by comparing the bill and answer, and not by any issues otherwise made up. And it may be here remarked, that every thing charged, which is not admitted by the answer, must first be found by a Jury before the Court can act upon it ; for, according to the constitution of our Courts, the Jury is to decide all matters of fact. The Jury, in this case, found that the sale was “ justifiable,” and that Defendant purchased without notice, and for a valuable consideration: Upon which, the Complainant’s bill was dismissed. Now it seems clear to us all, that it was the province of the Jury to find only facts, or rather what the parties, by the bUl and answer, submitted to them ; that their finding the sale “justifiable,” was a conclusion not, submitted to them, either by the bill and answer, or indeed by the issues made up by the Court: And we are free to declare, that if the wife did elect to take as legatee, as charged in the bill, her power thereafter as executrix ceased—her assent operating for the benefit of those in remainder ; the legatees thereby acquiring a legal title to that, which before was an equitable interest. The effect, then, would be, that the wife could only legally, or equitably convey to the Defendant, what she herself had, a life estate. And as to the effect of a purchase' by an innocent man for a valuable consideration in such a case, we also hold that the rule in equity is clear, as between mere equitable claimants, or, in other words, those who only have equitable titles, that qui prior est tempore po-tior est jure', and that a younger equity, can in no case prevail against an older, but where it has also the law; for the maxim then is, that there being equity on both *227 %ides, the law shall prevail. In a controversy between such parties, the legal title has been emphatically called the Tabula naufragis, upon which either might support himself. When it is said, that either may support hims If by the legal title, it is meant, that equity will not take <rto a if a legal defence from such innocent purchaser.—■ When an equitable owner of property calls upon the legal owner for the title, which has been called the shadow, a Court of Equity regards the substance, and will, in general, compel him to surrender it; for it would be contrary to the first principles of justice, that he who has only a formal paper title, should, without any merits, hold it and enjoy the benefit, against him who has honestly paid his money for it. Rut when a Court of Equity is called upon to take away that right, which the law would sustain, if this legal owner can himself shew equity, having the law and equity also, a Court of Equity will refuse its interposition, and, in such case, leave it to the law to decide.
Whenever, therefore, any innocent, honest purchaser, has armed himself with the law, though his equity might be postponed, a court of equity will not take away the de-fence ; but if it amount not to a defence at law, the complainant in equity would be idly spending his money to obtain it. When a bill therefore is filed by one who has the 1 gal title, but who comes into equity because he cannot be completely relieved at law, it is no defence for the Defendant to plead that he is an innocent purchaser for a Valuable consideration without notice—because the Complainant is not seeking to disarm him at law, the Defendant at best having but a wooden sword, incapable of protecting him against the assault of a legal claimant. This point was expressly determined by Lord Thurlow, in the case of Williams v. Lawler * where he says it does not apply against one seeking a legal claim, and is only a bar to an equitable title ; and it is to no purpose to say, that the case turned upon the claim of a widow, for that is not *228 noticed by the Lord Chancellor. The Counsel for the purchaser admitted, that in the casé of two equities, want of notice could make no difference, for the oldest must prevail. Courts of Law afford a remedy where the Plaintiff has a title to the thing in question, either by adequate damages, or the possession of the thing itself: Courts of Equity exercise no control over the property itself, but afford relief by acting on the person, wherever the Complainant has a title aqd cannot completely assert it at law ; or where he has no effectual title, but only a right to have one. The right to have a title, follows the property as an incident, so long as it continues to be owned by those who purchased with notice of this equitable claim, or by those who gave no valuable consideration for it; but when purchased, and the legal title actually passed, and for a valuable consideration' paid, before notice, then the incident is not dismembered, and such purchaser will stand in the shoes of his vendor: And it is the same, if the conveyance was so defective, that the legal title did not pass ; for in such cases, it remains as it would have done between two persons, both of whom had bargained lor the same property, but neither had obtained the legal title, they would neither’ of them have more than equities, and the rule qui prior est tempore, must necessarily prevail. So if a person purchases a pa*per not negotiable, he obtain® only an equitable title, and ^he consequence is, that the Want of notice can make no difference. He is subject tó‘ all the equity of his vendor; and so the rule lias always *been, and does not arise from the form of action at law#J for it was so held whilst Courts of Law respected equitable interests : But there are cases in which it is not necessary to apply to Courts of Law f<?r assistance, as in the case of a bond to make title, which if assigned, ¿he assig-nee in equity must do the same equity which the assignor ought to have done befóre he could obtain a title. From this reasoning, it seems to me conclusively to follow, that is the legal rule which operates as the shield to the pur *229 chaser, and that Lord Thurlow was right in his application of the rule. And indeed the books are full of cases where a younger purchaser, lor a valuable consideration, and without notice, has been permitted, after discovery of an older purchaser, to buy a prior incumbrance, and therebif pro ect himself. Now il the rule laid down in argument Were true, that whenever an innocent purchaser, for valuable consideration, and without notice, was attempted to be disturbed, that such plea would of itself protect him. —in other words, that the honesty of his purchase should defend him—it is remarkable, that in all the cases aliuded to, the honest purchaser was only protected after he had got in the legi.l title. The books, indeed, when speaking of those cases, say, where equity is equal the law shall prevail, and that he who hath only an equitable title shall not prevail against law and equity. And they lay it down as established doctrine, that a bona fde purchaser, without any knowledge of the defect of his title, may lawfully buy in every judgment or incumbrance, and though nothing be due upon it, yet if he can defend himself at law with it, his adversary shall have no aid in equity to set them aside ; for being able to defend himself at law, equity will not disarm him.
The decree of reversal is confirmed.

 3 Brown Rep. 264.